William Safford, CA Bar #286948
P.O. Box 211
Palo Alto, California 94302
Ph: (650) 308-5575
Fx: (650) 600-3727
william@saffordlegal.com

*Counsel for Defendant Dean Tuan Trinh*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:     **3:13-CR-00501-RS** |
| **Plaintiff,** | |
| v. | |
| DEAN TUAN TRINH, | **SENTENCING MEMORANDUM** |
| **Defendant.** | |

Defendant Dean Tuan Trinh, through counsel, submits the following sentencing memorandum for the Court's consideration, to assist in determining whether the agreed sentence will best address the interests of justice and the dual objectives of punishment and rehabilitation.

**Procedural Posture**

Dean Tuan Trinh comes before this Court now for sentencing, following execution of a Plea Agreement and change of plea on August 7, 2013.  Mr. Trinh entered a plea of Guilty to Count One of the Indictment in Docket 3:13-CR-00501-RS (the "Florida case") and to Counts One through Nine of the Indictment in Docket 3:13-CR-00336-RS (the "California case").  The

matter is now set for sentencing on November 12, 2013.  On that date, the Government and Mr. Trinh have agreed to request a sentence of three years supervised release with five months home detention and other financial and property sanctions.  For the reasons detailed below, Mr. Trinh asks this Court to accept the agreed sentence of the parties and pronounce judgment accordingly.

### Factual Background

Up until the last few years, Mr. Trinh embodied the American dream.  His parents immigrated to the United States when he was still a child.  He was raised in California, naturalized at age nineteen, and married his high school sweetheart, with whom he is raising two children.  Although he and his wife originally intended to complete medical school, plans changed and he instead began exploring the world of the entrepreneur – starting small businesses and nurturing them into success.

In 2009, Mr. Trinh began expanding a hobby into one such business.  He took his knowledge of saltwater aquariums and his familiarity with the stores that services hobbyists, and began supplying those stores with freshly and humanely caught fish.  It is worth noting that most of his activities in the course of operating this business were completely legal and focused on sharing his love of all things aquatic.  Yet, undeniably, Mr. Trinh began to cut corners and cross legal lines.

Without minimizing the seriousness of these charges, it should be recognized that Mr. Trinh's offense is among the least harmful of its kind.  He took sharks that were close to the legal size (instead of dramatically below it), never took species that were endangered or at serious risk, and did so not out of a pure desire for profit, but rather in response to a perceived

need – his prior entrepreneurial endeavor had ended in failure to obtain the desired patent and left his family with significant debt.  Again, none of this excuses the behavior, but perhaps it may help to explain why Mr. Trinh, a man who had showed no signs of lawlessness for the first four decade of his life, decided to violate state and federal law in this manner.

Nonetheless, Mr. Trinh bears all the indicia of someone who intends to reform and rehabilitate, and is the beneficiary of a broad network of family, friends, and supporters who will aid him in this task.  Attached the Court will find letters from his wife Daniela, the Reverend Michael C. Garner, Reverend John S. Bristol, and several family friends.  The common theme of these letters is that, despite his recent transgressions, Dean Trinh is a good man, who loves his family, supports those around him, and serves his community well.  These supporters join in asking the Court to follow the recommended sentence, thus effectively and meaningfully punishing Mr. Trinh while still leaving him where he can do the most good – at home with his family and at work in his community.

Mr. Trinh is out of the fish business.  AquaTop U.S.A. no longer exists, and Mr. Trinh will no longer catch or sell sharks, legally or otherwise.  Instead, over the past year, he has taken one of the pieces of equipment normally used in constructing natural aquaria, L.E.D. lights, and built a new business based on this important piece of technology.  SoLed Energy, Inc. provides energy-efficient, environmentally-sound lighting to businesses and organizations throughout the Bay Area, including offices, hotels, and churches, and supplies the lights themselves to contractors working in other businesses.  Although Mr. Trinh started SoLed to pay the bills, the business is making a positive, meaningful contribution to the environment and the community.

While there are many cases which call for harsh punishment, this is not one of them. This is not because Mr. Trinh's crime should not be taken seriously – to the contrary, he recognizes that environmental crimes affect everyone, and the Lacey Act has embodied this principle for more than one hundred years.  Rather, the Government and Mr. Trinh have entered into an agreement that results in a non-prison sentence precisely because he is taking this matter seriously, has shown understanding of and remorse for his actions, and has the prospects and support to succeed if given the chance.

**Stipulated Guidelines Calculations and Sentence**

Both the Government's Sentencing Memorandum and the Presentence Investigation Report ("PSIR") conclude that "the offense level for the California case is 9, criminal history category 0, Zone B, 4-10 months" and "[t]he total offense level for the Florida case is 8, criminal history category 0, Zone A, 0-6 months imprisonment."  *Sentencing Memorandum* at 2-3; see also *PSIR* at ¶¶ 24-33 and 37-46.  Additionally, the Government correctly notes the following agreed sentence:

1.  Three years of supervised release, including five months of home detention;

2.  Restitution of $14,400;

3.  Criminal fine of $10,000;

4.  Special assessment of $1,000; and,

5.  Forfeiture of Mr. Trinh's truck, boat and trailer.

*Sentencing Memorandum* at 3.   Mr. Trinh agrees that these terms accurately reflect the agreement of the parties and stipulates thereto.

## Additional Requests

In addition to the terms set forth in the Plea Agreement, Mr. Trinh asks for two minor considerations, both of which are consistent with the positions taken by the Government and Probation. Both requests have to do with the ongoing operation of his business, which by its nature, involves a certain amount of travel, a significant portion of which takes him out of the District.

First, when originally considering terms of a potential plea agreement, undersigned counsel and counsel for the Government discussed the question of whether Mr. Trinh would be allowed, during the course of serving a non-prison sentence, to continue operating his L.E.D. business. Although the decision was made not to include this matter in the formal Agreement, the Government agreed not to oppose a request by Mr. Trinh to continue operating his business, and to be permitted regular travel outside his home for the purpose of marketing his business, selling and delivering product, and supervising installations. Accordingly, Mr. Trinh asks that the Court, when imposing sentence, provide an exception to any sentence of home detention, for the exclusive purpose of legitimate entrepreneurial activities, subject to the supervision of and prior approval by his Probation Officer. Such activities currently include all of the business activities of SoLed Energy, Inc. and a small amount of time spent managing a rental property owned by Mr. Trinh and his wife.

Second, part of Mr. Trinh's regular business activities includes travel outside the District, usually for the purposes of participation in marketing events or direct customer interactions. Recently, the Court approved Mr. Trinh's attendance at one such event, and allowed

1  modification of his pre-trial supervision for the purpose.  In a similar vein, and for the sake of

2  efficiency and judicial economy, Mr. Trinh asks that this Court, when imposing sentence, allow

3  for travel outside of the District at the discretion of his Probation Officer, without the need to

4

5  seek circumstance-specific orders from the Court.

6        Both of these requests seek exceptions to the general punitive orders to be imposed in this

7  matter, but do so *only* in service of the overall goal of ensuring that Mr. Trinh thrives in a post-

8  judgment rehabilitative environment.  The purpose of limited travel outside of the home while

9

10  on home detention, and limited travel outside of the District while on supervised release, would

11  be to further Mr. Trinh's ongoing efforts to lawfully contribute to his family's financial security.

12  With the supervision of his Probation Officer, all such travel would be limited in scope only to

13

14  what is reasonably necessary to operate a successful business.

15                                  **Conclusion**

16

17        Mr. Trinh does not seek to make light of his crimes, nor does he imply that he is more

18  deserving of leniency than any other similarly situated.  Yet, because of his understanding of his

19  offense, lack of any ongoing danger to the public, and strong network of support, Mr. Trinh is in

20

21  a better-than-average position to achieve successful rehabilitation.  The Plea Agreement in this

22  matter contemplates a sentence that, by its nature, asks the Court to take a chance on Mr. Trinh,

23  giving him the opportunity to prove his remorse, changed behavior, and continuing value to the

24

25  community.  Accordingly, Mr. Trinh asks the Court to accept the Plea Agreement as executed,

26  and to impose the sentence described therein, recommended by Probation, and stipulated to by

27  the Government.

28

Respectfully submitted this 4th day of November, 2013.


By:   /s/ William Safford
William Safford          286948
*Counsel for Defendant Trinh*
P.O. Box 211
Palo Alto, California 94302
Ph: (650) 308-5575
Fx: (650) 600-3727
william@saffordlegal.com

To: Judge Seeborg,                                                    September 6, 2013

My name is Daniela Trinh, Dean (Tuan) and I have been married for 23 years.
We met during my international exchange year in Milpitas High School in 1986. During this exchange
year, we became good friends and I introduced Tuan to the church I was attending then, First
Presbyterian Church of Milpitas, now Christ Community Church. Tuan committed his life to Christ that
year and got well connected to many in the church, including pastors, High School friends and their
families. These relationships have lasted until today, many of these friends we consider family.
Tuan went on to UC Davis right after High School, while I went back to Germany to finish grades 12 and
13 of my German high school. In 1989, I joined Tuan in Davis, working as a nanny and taking classes at
a city college with a student visa. After our wedding in 1990, Tuan and I moved into married student
housing on the UCD campus. Tuan had joined a Christian college group named Intervarsity, so we were
surrounded by many good friends during the first years of our marriage. We still keep in touch with
several of those friends.
Tuan's parents did not approve that we got married so young. Tuan's father is a Medical Doctor and
wanted him to finish Medical School before getting married. They cut Tuan's financial support soon after
he started his classes in UCD, and they did not attend our wedding. Many friends from our church
stepped in immediately and helped to organize the wedding with minimum financial burden for us.
Since he was a little boy, Tuan has always had a passion for fish. In his college room, he had an
aquarium with saltwater fish and when his finances were cut, he started selling a few fish and the tank,
which led to a small business that helped him and us, combined with support from my parents in
Germany, to pay our way through UC Davis.
Tuan graduated in 1992 with a degree in Biochemistry.
After he was accepted in the Medical School of Hannover, we moved to Germany in the summer of 1992.
Tuan passed two of the four exams, but had to deal with some language related challenges in the third
exam. With additional struggles of being homesick, we decided to move back to California. Our daughter
was born in Germany in July 1999, in October that year we moved back to Milpitas.
After completing my clinical rotations, I graduated from the Medical School of Hannover in 2000, but
decided to dedicate my time to our growing family and not transfer my degree to the US system. Until
today, Tuan has been providing the income for our family.
We bought our current home on _____ in the fall of 2001. Our s_____ as born in
2002.
Tuan has started several businesses through these years, most of which were successful and provided
the income for us that we needed.
Tuan has always had a strong spirit of an entrepreneur, has thought of new, unique ideas in many areas
of business. I have not been involved in details, but have known about the general business plan for
each.
I was shocked and disturbed to hear the charges that were raised against Tuan in June this year. We
have talked much since then and I know for certain that whatever happened in the past to lead to these
charges, will not repeat itself in any way. I know that Tuan regrets truly what he has done to violate the
law.
Our marriage has been stronger in these last few years than at any other time before, and I know that this
crisis will bring out our need for each others support even more.
Tuan and I spend much time together, we enjoy talking, taking walks, inviting friends, attending classes at
our church, playing tennis, biking, etc..
Most of all, we love to spend time as a family with our two kids, going on day trips to the beach, hiking,
playing games. We support them in their school work and in their sports, and let them invited their friends
to our house frequently. Tuan is an amazing and dedicated father to our children.
Once a year we try to visit my family in Germany, some years I have gone alone with the kids, if Tuan's
schedule didn't allow travel for him. In these next few years, we are aware that Tuan cannot leave the
country and we are prepared for all adjustments.
A few years after our wedding, the relationship with Tuan's parents was reconciled, we now see them
regularly and consider them a valid part of our support system.
We have a vast and strong support from close friends all around us, many from Christ Community
Church. Tuan has had a long and deep friendship with our head pastor of 37 years, Dr. John Bristol, and

SENTENCING MEMORANDUM ---- Page 8

has a several close friendships within the church and outside of it.  We have received many emails, letters, texts and phone calls since the news of the charges against Tuan became known, all offering any kind of support that we need.

I feel that we are in a close, strong and loving network of friends and family.

If I was asked to describe Tuan in a few descriptive words, I'd say that he is kind, loving, compassionate, smart, inventive. He is able to multitask, which is a gift, but can become a challenge, when he cannot pay full attention to important details like we have seen in some transactions related to this legal case.  Tuan and I talked about this often since and are committed to make changes, I will help him in this process.

He will always keep his genuine passion and love for fish, but has not been involved and certainly will not be involved in any kind of business with live fish or live animals in the future.

Since 2012 he has been building up a successful LED lighting business, which we are planning to continue longterm.

I know that the effects of pleading guilty in this case have been strong, Tuan has regretted deeply what he has done to violate the law and is fully committed to complying with the probation office.

I will support Tuan in every way through the sentence and the time after.

Sincerely,

Daniela Trinh

*Daniela Trinh*

September 2, 2013

Re: Dean Trinh


Dear Judge Seeborg,

I have known Dean Trinh since 1986 – 27 years now.  I knew him first as a high school senior, leading food drives for underprivileged children.  I pastorally counseled him numerous times throughout these past 27 years as well.  Hence I feel uniquely qualified to write this letter.

Dean is very creative and self-motivated gentleman.  His gift is to identify needs and finds unique ways to fulfill them.  This aids him in the business world and as a friend and helper to others.  He is continually offering his expertise, wisdom and even practical, hands-on help to many he knows.

In starting his businesses, his goal is to serve his customers as best he can.  I have watched him put even greater profit aside numerous times in order to make sure the customer received the best deal or best product.  He is especially concerned about environmental issues – hence his entry into the solar and LED fields.

I have heard his sales pitch to a number of customers now for LED lights.  Always in the forefront is his passion for reducing a company's energy footprint.  Describing T-8 LED replacements for fluorescent tubes, e.g., he points out the amount of mercury we are putting in our landfills from the tubes and the necessity of stopping this tragedy.  He sees himself as partnering with companies to make a healthy, environmental difference in our world.

Dean is also someone who learns from his mistakes.  Again, I feel uniquely qualified to say this as I've seen it again and again in counseling.  He listens, seeks to understand his role in whatever has occurred, and then strives to make amends and ensure he does it right the next time.  I believe with all my heart that Dean will move forward from this in earnest integrity.

Thank you for considering this letter.


In His Grip,

Rev. Michael C. Garner

Dear Judge Seeborg,

I have known Dean Tuan Trinh for more than 20 years both in the context of being pastor of the church to which he belongs and in the context of personal friendship.  I believe he has the capacity and the resolve to face the misdeeds he has committed and begin a new chapter of respect and obedience to our laws.

From our recent conversations I am confident that Tuan recognizes the seriousness of past errors and the utter necessity of uncompromising compliance to the statutes of our government.

As his pastor and friend I will do all in my power and within my resources to encourage and support him in these efforts to conduct his business and personal life well within the borders and framework of legal limits. It is gratifying to me that whereas Tuan's former employment violated laws designed to protect our environment, his new line of work involves a substantial positive contribution to our environment.

The LED lighting and the solar panel energy systems he sells represent a major advance in the application of technological breakthroughs to meet our need for clean renewable energy.

Among the groiwng list of Tuan's customers are the General Electric Nuclear Training Facility in San Jose, Mount Hermon Conference Center in Scotts Valley, automobile dealerships, and churches such as First Presbyterian Church of Salinas and Christ Community Church of Milpitas.

I believe that Tuan's negative past will not be repeated and that his future will bring a positive contribution to society.

Sincerely,

*John S. Bristol*

John S. Bristol

SENTENCING MEMORANDUM ---- Page 11

To Judge Seeborg,


It is my privilege to write this letter of a personal friend, Dean Trinh.

In October 2006 we connected through our children and soon became close family friends.

Throughout the years I've always been inspired by Dean, the tenacity and attitude of his work and personality.

Through July 2012 to February 2013 I lived in their house and got to see Dean daily and observe his work.

Dean is innovative, hardworking and excellent business man. He has variety of social connections, as friends and in business  and is liked by all.

His character is easily approachable, very giving, thoughtful and kind. He is dedicated to his family and that is his main motivation for work.

He is inspired by various things.

Dean has helped personally myself and my family in many ways, and I'm extremely thankful for that.

I have no reason to doubt his character or convictions.


Sincerely,

Mia Chorin Jantunen

Your Honor,

I have known Tuan Trinh since I moved to California in 2009.  We met for the first time 4 days after arriving in California when visiting a local church.  We didn't know anyone, but he welcomed us and made us feel very comfortable.  The next day was the first day of school and by chance we met again when both he,his wife, myself and my wife were dropping off each of our children off for the first day of elementary school.  We each have two children, at the time one in 2nd grade and one in 5th grade.  We have been friends ever since, taking an occasional ski trip together, hiking, camping, and sharing the occasional coffee.

The Trin's home is a welcome place to visit for my entire family and many others.   In the Park across from the Trinh's you'll occasionally find a a zip line that Tuan has set up for kids to zip from one tree to the next.   Many times when we just stop by to talk or say hi, we have had the privilege to meet other friends of his that have dropped by who have done the same.

Tuan is often the one to call a few friends to get together to help someone in need.  Whether its to arrange a few guys on a Saturday morning to do some demolition to help a friend save a few $ on a renovation, changing out light bulbs at the church to help the entire community save on utility bills, or getting volunteers together to string Christmas lights at the church, its Tuan making the calls and being there to get things done.

I consider Tuan a good friend, value his friendship and respect his entrepreneurial spirit.  Tuan had confided in me the issues surrounding his arrest and plea related to the sharks in California as well as the Florida case.  Although Tuan began supporting himself in College cleaning pools and fish tanks which led to his fishing related business, along with his love of fish in general, Tuan has already turned his business focus away from sharks and toward his successes in his lighting business.   Tuan is anxious to accept the house arrest sentence and move forward with his life.

Neither the local community, California or Florida will benefit by rejecting this plea deal.  Please accept this deal as this will allow Tuan to continue to provide for his family through his lighting business, and be close to his children, family and friends.

Regards,

D. Scott Felker

SENTENCING MEMORANDUM ---- Page 13

9/10/2013

To whom it may concern,

In reference and support for Tuan Trinh and his family, friends of ours for many years.

We have always known Tuan Trinh as An upstanding citizen in the community and church.
Most generous with his time and possessions to help others, an outstanding husband and father.
A kind and loyal friend

We are truly grieved that he is in this kind of predicament.
We hope for a lenient and fair decision

Thank you, respectfully,

Ron and Anita Faye

*Anita J. Faye*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 4, 2013, a copy of the foregoing **Sentencing Memorandum** was served upon all parties herein using the E.C.F. system, which will send notification of such filing to the following:

Maureen C. Bessette, Esq.
United States Attorney's Office
1301 Clay Street, Suite 340S
Oakland, California 94704
*Maureen.Bessette@usdoj.gov*

By:   /s/ William Safford
            William Safford                   286948
            *Counsel for Defendant Trinh*